UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**TODD W. GATTIS,**

    **Plaintiff,**

v.                                                                           Case No.: 8:05-cv-1062-T-26MSS

**JO ANNE B. BARNHART,**
**COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act (the Act"), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying claims for period of disability, disability insurance and supplemental security income benefits under the Act.[1]

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge, the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

**I.**    **Background**

    **A.**    **Procedural History**

Plaintiff filed applications for disability, disability insurance benefits and supplemental security income on April 3, 2002. (T. 10) Plaintiff alleged that he was unable to work as of

---

[1] The District Court has referred this matter to the Undersigned for a Report and Recommendation pursuant to Title 28, United States Code, Section 636(b)(1)(B)-(C), Fed. R. Civ. P. 72 and Local Rules 6.01(a), (b) and 6.02(a), M.D. Fla.

January 30, 2001, due to extreme depression and anxiety. (T. 13) His applications were denied initially and upon reconsideration. (T. 45-53) Plaintiff requested a hearing, which was held on September 23, 2004, (the "Hearing") before Administrative Law Judge Ann S. Azdell (hereinafter referred to as the "ALJ"). (T. 301-307) In a decision dated December 10, 2004, the ALJ denied Plaintiff's claims for benefits. (T. 7-21) The Appeals Council denied review of the decision on April 6, 2005. (T. 3-5) This action for judicial review ensued.

### B.     Medical History and Findings Summary

Plaintiff's medical history is set forth in the ALJ's decision. By way of summary, Plaintiff reported that he was unable to work from January 30, 2001, through the beginning of September 2002, due to depression and alcohol dependence.[2] Plaintiff has been gainfully employed since September 2002. (T. 12)

At the Hearing, the Plaintiff presented the ALJ with medical records from Plaintiff's treating and examining physicians.

Plaintiff reported that he has been drinking alcohol since he was a teenager but it only became a "crutch" in 2001-2002. (T. 321) After leaving his job in January 2001, Plaintiff was consuming at least one-six pack and five to six shots of alcohol a day. (T. 321) In February 2001, Plaintiff was hospitalized at Hinsdale Hospital in Hinsdale, Illinois for depression and alcoholism. (T. 323)

On December 7, 2001, Plaintiff was admitted to Windmoor Healthcare for major depression and alcohol dependence. Upon his admission, Plaintiff stated that he was drinking between one-half and one pints of vodka per day and he had a Global Assessment of

---

[2] The Commissioner notes that the closed period is from February 1, 2001, through August 31, 2002 (Comm. Br., pp. 9-10) This slight difference in the dates for the closed period is not material.

Functioning ("GAF") score of 20.[3]  (T. 155)   While at Windmoor, Plaintiff was given antidepressant medication and "detoxed."  (T. 158)  On December 10, 2001, Plaintiff was discharged with instructions to attend alcoholics anonymous ("AA"), get a sponsor and participate in a twelve step program.  (T. 156)  At the time of his discharge, Plaintiff was prescribed and taking medications, including the anti-depressant Paxil.  (T. 156)

On December 12, 2001, Plaintiff was admitted to Fairwinds Treatment Center, again for treatment of depression and alcoholism.  (T. 170-78)  At the time of admission, Plaintiff's GAF score was 35.  (T. 172)  Plaintiff remained at Fairwinds until January 4, 2002.  While at Fairwinds, Plaintiff participated in psychotherapy and Alcoholics Anonymous meetings and continued taking Paxil, although at a higher dosage.  (T. 171)  When discharged, Plaintiff was instructed to continue attending weekly group psychotherapeutic sessions and taking Paxil at the higher dosage prescribed.  (T. 172)  Upon discharge, Plaintiff's GAF score was 70.  (T. 172)

On March 18, 2002, Plaintiff was admitted to North Bay Hospital for treatment for gastrointestinal bleeding.  (T. 183-213)  Upon his admission, Plaintiff stated that he had "failed" AA and continued to drink.  Plaintiff's GAF score at admission was 50-55.  (T. 180)  Upon his discharge, Plaintiff was told to take his anti-depression and anxiety medications on a regular basis, as well as to undergo inpatient rehabilitation.  (T. 184)  Plaintiff was readmitted to

---

[3] GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning."  AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV).  A GAF of 61-70 indicates that either some mild depressive symptoms are present or that difficulty in social or occupational functioning exists.  A GAF of 51 to 60 means "moderate symptoms" or moderate difficulty in social, occupational, or school functioning. A GAF of 41-50 indicates either "serious symptoms" or any serious impairment in social, occupational, or school functioning.  A GAF score of 31-40 indicates "some impairment in reality testing or communication" or major impairment in several areas, such as work, family relations, or judgment."  Finally,  a GAF score of 21-30 indicates that behavior is "considerably influenced by delusions."  Id.

3

Fairwinds for inpatient rehabilitation on March 23, 2002, where he remained until April 19, 2002. When admitted, Plaintiff's GAF score was 25. (T. 218) Plaintiff was found to be suffering from major depression and was briefly placed on a suicide watch. (T. 218)

In May 2002, Plaintiff was briefly admitted to Springbrook Hospital under the authority of the Baker Act. During an examination by the attending psychiatrist, Dr. Rodriguez, Plaintiff stated he "was taking his medicine and doing great, but 'I think that maybe my medicine was not working well. I have been very upset and I did try to jump out of the car.'" (T. 303) In his summary, Dr. Rodriguez noted that Plaintiff's long problem with alcohol "appears to be his main difficulty." (T. 303) Later in the same summary, Dr. Rodriguez stated that Plaintiff had not been compliant with his medicines, did not show evidence of withdrawal and appeared to be chronically depressed. (T. 303-04)

Treatment notes in the record demonstrate that Dr. Krishan Batra treated Plaintiff for depression and substance abuse from approximately November 1, 2001, through August 15, 2002. (T. 255-70) At the time of Plaintiff's inpatient rehabilitation, Dr. Batra was a staff physician at Fairwinds. On several occasions during the relevant time period, Dr. Batra diagnosed Plaintiff with "major depression" or "major depression recurring." (T. 172, 177, 218, 238) In a handwritten report dated January 3, 2002, in which Dr. Batra listed Plaintiff's complaints of panic attacks and inability to sleep among other problems, Dr. Batra wrote that Plaintiff was experiencing "almost the same scenario as when he was heavily drinking." (T. 260) In a Treating Psychiatrist Mental Health Report completed on July 7, 2002, Dr. Batra noted that although Plaintiff could "function normal[ly] there are unpredictable concrete episodes of severe impairment." (T. 238) On July 8, 2002, Dr. Batra wrote in a letter to Plaintiff's counsel that Plaintiff is "taking fine tuned psychotropic medications while attending intensive psychotherapy," and that he is "unable to function on any job . . . because of his acute psychiatric dysfunction."

4

(T. 306) In response to a fax from Plaintiff's counsel dated June 18, 2004, Dr. Batra wrote that Plaintiff has been "[p]rogressively worsening since May 2001 when dysfunctionality began." (T. 307)

After considering the evidence, the ALJ found that Plaintiff suffered from severe impairments including hepatitis and severe drug and alcohol abuse with attendant anxiety and depression. The ALJ further found that during the relevant time period of February 1, 2001, through August 31, 2002, the Plaintiff's condition rose to a level of severity to meet Listing 12.09 A and B in Appendix 1, Subpart P, Regulations No. 4. (T. 20, Finding No. 4) However, the ALJ concluded that absent consideration of Plaintiff's alcoholism and drug abuse, he had no severe mental impairments, and his physical impairment, albeit severe, did not preclude him from performing his past relevant work during the time period in question. (T. 11)

In reaching this decision, the ALJ determined Plaintiff retained the residual functional capacity (the "RFC") to perform a full range of light work in the absence of alcohol abuse and could return to his past relevant work as a repair service estimator, auto speciality service manager, service manager, assistant parts manager or contract manager. (T. 20-21, Finding No. 8) The ALJ therefore concluded that Plaintiff was not disabled under the Act. (T. 21)

## II.   Standard of Review

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole. 42 U.S.C. §405(g) (2000). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew nor substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

No similar presumption of validity attaches to the Commissioner's legal conclusions; rather the Court reviews the application of law *de novo*. See Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). If an error of law was committed by the Commissioner, the case must be remanded to the Commissioner for application of the correct legal standard. McDaniel v. Bowen, 800 F.2d 1026, 1029-30 (11th Cir. 1986); Smith v. Heckler, 707 F.2d 1284, 1285 (11th Cir. 1983). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. Jamison v. Bowen, 814 F.2d 585 (11th Cir. 1987).

Against this backdrop, Plaintiff asserts several points of error. Because resolution of two of those errors results in the Court recommending that the decision of the Commissioner be **REVERSED** and that Plaintiff be awarded a closed period of disability and concomitant payments, it is unnecessary to address the remaining points of error. Specifically, Plaintiff contends that the ALJ committed legal error in rejecting the findings of Dr. Krishan Batra, Plaintiff's treating physician, and that the ALJ therefore erred in finding that Plaintiff had failed to show that in the absence of his alcohol dependence he would still be disabled under the Act. The Commissioner responds that the ALJ properly rejected the opinion of Dr. Batra and concluded based on substantial evidence that Plaintiff failed to meet his burden under the Act to prove that his alcohol dependence was not material to the ALJ's finding that Plaintiff's mental impairment met a Listing.

### III. Discussion

**Whether the ALJ erred in dismissing Plaintiff's mental impairments as not severe once the ALJ determined that Plaintiff's drug and alcohol abuse were material to her finding that Plaintiff's mental impairment met a Listing.**

In this case, the ALJ found at step two of the sequential analysis that, in the absence of

drug and alcohol abuse, Plaintiff's mental impairment was not severe. Specifically, the ALJ found that:

> Absent his substance addiction disorder, the [Plaintiff] had the following severe physical impairment as per the Regulation: hepatitis (alcoholic liver disease). However, his major depression, anxiety, and schizoaffective disorder, absent the claimant's substance addiction disorder, are non-severe mental impairments that resulted in only mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace.

(T. 20, Finding No. 5)

The ALJ further found that "[b]y the [Plaintiff's] own testimony, he had none of these manifestations prior to or after he was abusing alcohol or drugs." (T. 18) Significantly, the source of this "testimony" was not noted and the Court has not been able to find it in the transcript of the Hearing or in the record. Finally, the ALJ found Plaintiff's statements regarding his own symptoms and resulting limitations only to be credible "in that they consider [Plaintiff's] alcohol abuse in combination with his other impairments." (T. 18)

In reaching her decision, the ALJ found that the opinion of Dr. Batra, Plaintiff's treating physician was not entitled to controlling weight and, in fact, assigned it little weight because she found Dr. Batra's opinion that Plaintiff would have been disabled despite his alcoholism to be "grossly inconsistent with the rest of the medical evidence of record . . . ." (T. 19) Specifically, the ALJ found that although Dr. Batra's notes "clearly establish that [Plaintiff] had low self esteem, a depressed mood, poor coping skills . . . these manifestations of a schizoaffective disorder were present only when the claimant was drinking heavily . . . ." (T. 17)

In 1996, Congress amended the social security regulations and provided that, "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the

Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423 (d)(2)(c), 1382c(a)(3)(J). The key factor in determining whether drug addiction or alcoholism is a contributing factor material to a disability determination is whether the claimant would still be found disabled if he stopped using drugs or alcohol. 20 C.F. R. § 404.1535(b)(1).

Here, the ALJ correctly noted that the key factor in determining whether drug or alcohol use is a contributing factor, "is what limitations would remain if the [Plaintiff] stopped using alcohol and drugs, and whether any or all of the remaining limitations would be disabling." (T. 16)

To reach this conclusion, however, the ALJ had to reject the contrary opinion of Plaintiff's treating physician, Dr. Batra, on this crucial medical issue. Dr. Batra stated:

> Mr. Gattis has been receiving intensive psychiatric treatment for severe depression associated with alcohol dependence and manifest with brief psychotic episodes . . . since November 2001. . . . Presently[,] he is taking fine tuned psychotropic medications while attending intensive psychotherapy work in my office including weekly group psychotherapy also. Prognosis is favorable only if he would regularly comply. . . . Mr. Gattis has been unable to function on any job for all that period of time because of his acute psychiatric dysfunction.

(T. 306)

Even more significantly, Dr. Batra opined:

> [He] believe[d] [Plaintiff's] mental impairment and limitations would have been severe and rendered him totally disabled, even if he were to stop using alcohol altogether, from [the summer of 2001] until August 31, 2002.

(T. 309)

In this circuit it is firmly established that the treating physician's opinion may not be rejected absent good cause to the contrary. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). Furthermore, that good cause finding must be set forth expressly on the face of the ALJ's opinion. "Absent a showing of good cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Commissioner." Lamb v. Bowen,

8

847 F.2d 698, 703 (11th Cir. 1988)(citation omitted); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986).

The reports of reviewing, non-examining physicians do not constitute substantial evidence on which to base an administrative decision. Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090, 1093 (11th Cir.1985); Strickland v. Harris, 615 F.2d 1103 (5th Cir.1980); Lamb, 847 F.2d at 703 ("The opinions of non-examining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence."). Further, the good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a non-examining physician where it contradicts the report of the treating physician. Johns v. Bowen, 821 F.2d 551 (11th Cir.1987). This priority, known as the "treating physician rule," is borne out of the notion that treating physicians generally have more knowledge of the medical history of their patients and in that capacity are best qualified to assess the nature of the claimed disability. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

An ALJ may, however, discount a treating physician's opinion if it is not supported by medically acceptable . . . techniques and is inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (1998). Furthermore, an ALJ may choose not to rely on a treating physician's report if she articulates good cause to do so. Edwards, 937 F.2d at 583. Good cause to discount a treating physician's report exists if the opinion is wholly conclusory or unsupported by the objective medical evidence in the record. Id.

The record reveals that other trained medical doctors in addition to Dr. Batra, including an agency non-treating, reviewing agency physician, found Plaintiff to be suffering from depression. More significantly, several of those doctors, as evidenced below, noted that Plaintiff's full recovery depended upon his undergoing a detoxification program and continuing

9

to take his prescribed anti-depression medication and participating in psychotherapy. Additional evidence that these physicians found Plaintiff's mental condition was not attributable solely to his alcohol abuse are the prescriptions given for anti-depressants and the recommendations that Plaintiff participate in continued psychotherapy. (T. 180, 184, 187, 304)

Upon admission to North Bay Hospital on March 18, 2002, Plaintiff was examined by Dr. Robert Kaszuba. In his admission summary, Dr. Kaszuba noted that "Plaintiff has a history of depression. Lately he was drinking heavily and feels slightly more depressed. . . ." (T. 187) Dr. Kaszuba recommended that Plaintiff be closely monitored. Id.

Dr. Amarjeet Dhillon issued a consultation report after visiting with Plaintiff on March 20, 2002, in which he found that Plaintiff suffered from "major depression, recurrent, severe," assigned him a GAF score of 50-55, and noted that he was taking the prescription drugs Effexor (an anti-depressant) and Vistaril. (T. 179-80) As part of his continued treatment plan, Dr. Dhillon recommended that Plaintiff undergo supportive psychotherapy. (T. 180)

On Plaintiff's discharge summary from Morton Plant Mease Hospital on March 23, 2002, Dr. Shalini Rueben noted that Plaintiff's discharge medications included Librium, Effexor and Thiamine. In addition, Dr. Rueben specifically noted that upon discharge Plaintiff needed to take his medications on a daily basis to treat his depression and anxiety. (T. 184)

In his summary of Plaintiff's May 2002 stay at Springbrook Hospital, where Plaintiff was involuntarily admitted after he attempted to jump from a moving car, Dr. Rodriguez stated that Plaintiff had not been compliant with his medicines, did not show evidence of [alcohol] withdrawal and appeared to be chronically depressed. (T. 303-304) On discharge, Plaintiff was prescribed three separate anti-depressants: Effexor (at the highest dosage prescribed in the record); Remeron; and Seroquel. (T. 304)

In a report dated August 8, 2002, Dr. David Grippe, a non-treating, reviewing physician,

stands alone in his finding that Plaintiff would have been "able to perform normally if he is medication compliant *and* remains free of substance use/abuse." (T. 251) The ALJ did not find Plaintiff ineligible for benefits for failure to take prescribed medication. While Dr. Grippe went on to suggest that Plaintiff's "*main* obstacle for routine employment is *related to* his chosen lifestyle of alcohol and illicit substance use," he offered no opinion that cessation of alcohol use would alone have rendered Plaintiff able to perform in a normal work environment during this acute period of mental impairment. (T. 251) Even if he had rendered such an opinion or if his opinion is construed as such, it could not override the contrary and express opinion of the treating physician. See Lamb, 847 F.2d at 703.

Dr. Batra treated Plaintiff over an extended and difficult period in Plaintiff's life. Dr. Batra's treatment notes during the closed period at issue lend support to his later findings that Plaintiff prognosis is favorable "only if he would regularly comply" with taking his medications and attending his psychotherapy sessions. (T. 306) When asked specifically, when Plaintiff became disabled, Dr. Batra responded that Plaintiff's dysfunction had been progressively worsening since it began in May 2001, and that Plaintiff was totally dysfunctional from February 1, 2001, until August 31, 2002, a period of time that exceeds the twelve month duration required for a finding of disability. (T. 307, 309) Dr. Batra's conclusions in this regard are supported by his own treatment notes and are further bolstered by 1) other physicians in the record finding Plaintiff depressed and recommending that he continue on his medication; 2) the issues in Plaintiff's personal life that are well documented in the record and undisputed; and, 3) the fact that Plaintiff had been able to retain employment despite years of alcohol abuse, with the exception of the time alleged in the closed period at issue.

Based on the foregoing, the ALJ's decision at the low threshold of step two of the sequential analysis that Plaintiff's mental impairment was not ever severe in the absence of drug

and alcohol use was not supported by substantial evidence or consistent with law.

The standard at step two, when the ALJ is called upon to determine whether a plaintiff's impairments are severe, is a low one. By definition, this inquiry is a "threshold" inquiry and allows only claims based on the most trivial impairments to be rejected. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. See Stratton v. Bowen, 827 F.2d 1447, 1450 (11th Cir. 1987). This severity test is a "reasonable administrative convenience designed to screen out groundless claims." Id. at 1452. Therefore, a plaintiff need show only that an impairment is not so slight and its effect not so minimal. McDaniel, 800 F.2d at 1031.

No medical evidence other than perhaps a conclusory statement of a non-examining, review doctor suggested that Plaintiff would not be even minimally impacted in his ability to work had he avoided alcohol. This error alone warrants remand to require the ALJ to complete the sequential analysis and include Plaintiff's diagnoses of depression and anxiety, as well as Dr. Batra's limitations in any hypothetical presented to a vocational expert (the "VE").

In this case, however, the ALJ's error was even more significant. Because no good cause supported the rejection of Dr. Batra's opinion that alcohol abuse was not material to Plaintiff's disability, that opinion must be accepted as true as a matter of law. See MacGregor v. Bowen, 786 F.2d 1050 (11th Cir. 1986). Accepting Dr. Batra's opinion as true, Plaintiff suffered from depression and its identified effects during the closed period at issue. The ALJ found that if credited those findings would prove that Plaintiff met a Listing for disability, and he would have been deemed disabled as a matter of law. See Richardson v. Apfel, 44 F. Supp.2d. 1264, 1265 (M.D. Fla. 1998).

Further, at the Hearing, the VE testified that if an individual were to suffer from the symptoms and resulting restrictions of depression described by Plaintiff's counsel,[4] such restrictions would preclude all competitive employment and Plaintiff would have to be found disabled under the law.  (T. 335)  When the VE testifies that there are no jobs that the plaintiff could perform given the impairments set forth by the plaintiff's treating physicians, remand for the calculation and payment of benefits is appropriate.  <u>Stevenson v. Apfel</u>, 103 F. Supp. 2d 1315, 1321 (N.D. Ga. 1999).

IV.    Conclusion

For these reasons, the Undersigned **REPORTS** and **RECOMMENDS** that the decision of the Commissioner be **REVERSED** and **REMANDED** for a calculation and award of benefits to Plaintiff for the closed period at issue and that the **CLERK** be directed to **CLOSE** this case.

**RESPECTFULLY RECOMMENDED** in Tampa, Florida in this 17th day of August 2006.

MARY S. SCRIVEN
United States Magistrate Judge

---

[4] Such restrictions include the inability to have more than minimal interaction with the public, co-workers and supervisor's; impaired attention and concentration for more than a few minutes at a time; and, the need to lie down frequently.  (T. 335)

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies furnished to:

Presiding District Court Judge
Counsel of Record
Unrepresented Parties